# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHAEL J. BEAVER,

|  |  |
|---|---|
| Petitioner, | Case No. 15-cv-13678 |
| v. | Judith E. Levy<br>United States District Judge |
| THOMAS MACKIE, | |
| Respondent. | Mag. Judge Mona K. Majzoub |

_____/

# OPINION AND ORDER DENYING THE PETITION [9], DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Michael J. Beaver is a state prisoner in custody of the Michigan Department of Corrections. He filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254 (ECF No. 1) and an amended petition that incorporates by reference the arguments made in the initial petition (ECF No. 9). The two petitions challenge Petitioner's state convictions for one count of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), two counts of larceny of a firearm, Mich. Comp. Laws § 750.357b, and one count of possession of a firearm by a felon, Mich. Comp. Laws § 750.224f.

Petitioner's seven habeas claims raise issues about the trial court's denial of Petitioner's motion for new trial, the prosecutor's conduct, the destruction of notes used to generate a police report, and Petitioner's trial and appellate attorneys. (ECF No. 9, PageID.148-49). The State of Michigan urges the Court to deny relief because Petitioner's claims are not cognizable on habeas review, lack merit, were abandoned, or are procedurally defaulted. (ECF No. 12, PageID.208-09).

For the reasons set forth below, the petition for the writ of habeas corpus is DENIED.

## I. Background

### A. The Charges, Trial, and Sentence

The prosecution initially charged Petitioner with first-degree home invasion, second-degree home invasion, two counts of larceny of a firearm, and one count of possession of a firearm by a felon. (ECF No. 13-6, PageID.378). These charges arose from a home invasion and the theft of a safe, firearms, jewelry, and other items from a home in Crawford County, Michigan in 2010. Petitioner was tried jointly with co-defendant

2

Damon Pamame in Crawford County Circuit Court. The Michigan Court of Appeals summarized the facts as follows:

> Sometime in January 2010, Ryan Plaga received a tip that the owner of a home located in a remote part of northern Michigan did not occupy the house during the winter months. Plaga testified that in the early morning hours of February 3, 2010, he and defendant, who then lived with Plaga, broke into the home. According to Plaga and Leah Deardorff, Plaga's then-girlfriend, Deardorff had driven the two men to the house. Plaga testified that he entered the home through a window and let defendant in through the front door. During the break-in, one of two safes inside the residence was opened with keys provided by Damon Pamame, tried jointly with defendant, but the keys did not work on the other safe. Plaga then contacted Pamame, who drove to the scene, and the three men slid the 300–pound safe through the snow and hoisted it into Pamame's truck. In total, at least 21 firearms, televisions, computers, a stereo, jewelry, and hunting supplies, including knives and ammunition, were taken from the home. Police investigation eventually led to Plaga, who implicated both defendant and Pamame. At trial, defendant denied any involvement in the break-in. He testified that he had gone up north in November 2009, but had left around January 20, 2010, after seeing numerous weapons in Plaga's garage. Defendant said he had to leave because he was a convicted felon and could not legally be around firearms.

*People v. Beaver*, No. 309787, 2013 WL 6689101, at *1 (Mich. Ct. App. Dec. 19, 2013) (unpublished).

During the trial, the parties agreed to delete the second count and to make second-degree home invasion a lesser charge of first-degree home

invasion. On February 16, 2012, the jury found Petitioner guilty of first-degree home invasion, two counts of larceny of a firearm, and possession of a firearm by a felon (ECF No. 13-9, PageID.1683-84). On March 19, 2012, the trial court sentenced Petitioner as a habitual offender to 150 months (12½ years) to thirty years in prison for the home invasion, and to concurrent terms of 28 months (two years, four months) to 7½ years for the other convictions. (ECF No. 13-10, PageID.1724-25).

## B.  The Motion for New Trial and Direct Appeal

Petitioner moved for a new trial because the prosecutor made improper allegations about his prior convictions. (ECF No. 13-16, PageID.1881-1886). In an amended motion for new trial, Petitioner claimed to have newly discovered evidence that Plaga and Deardorff perjured themselves at his trial. (*Id.* at PageID.1910-12).  The trial court held an evidentiary hearing on Petitioner's motion, (ECF No. 13-13), and subsequently denied the motion in a written opinion. *See People v. Beaver*, No. 11-93202-FH (Crawford Cty. Cit. Ct. May 15, 2013) (ECF No. 13-16, PageID.1927-1936).

Petitioner then appealed his convictions on the grounds that: (1) the trial court abused its discretion by denying his motion for new trial; (2)

his trial attorney was ineffective for opening the door to inadmissible and prejudicial evidence that Petitioner was previously convicted of a similar charge; (3) the prosecutor committed misconduct by threatening and arresting Mary Vann; and (4) the prosecutor committed misconduct by (a) failing to correct perjured testimony, (b) vouching for his witness, (c) misstating the evidence in closing arguments, and (d) eliciting testimony about Petitioner's past gang affiliation. Regarding the fourth claim, Petitioner argued in the alternative that defense counsel was ineffective for failing to object to the prosecutor's misconduct. (ECF No. 13-16, PageID.1939-1940).

The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions. *See Beaver*, 2013 WL 6689101. The Michigan Supreme Court denied leave to appeal. *See People v. Beaver*, 849 N.W.2d 357 (Mich. 2014).

### C. The Initial Petition, Post-Conviction Proceedings, and Amended Petition

On October 14, 2015, Petitioner filed his initial habeas corpus petition (ECF No. 1) and a motion for a stay and to hold his habeas petition in abeyance while he pursued post-conviction remedies in state

court (ECF No. 2). To support his habeas petition, Petitioner later submitted his brief and attachments from his direct appeal. (*See* ECF Nos. 5, 5-1, and 5-2.)

On February 4, 2016, the Court granted Petitioner's motion for a stay. (ECF No. 6). Petitioner then filed a motion for relief from judgment in the state trial court. (ECF No. 13-14). He alleged that: (1) his trial counsel's illness affected counsel's ability to represent him and deprived him of his constitutional right to effective assistance of counsel; (2) the destruction of notes used to generate a police report deprived him of his right to cross-examination and right to present a defense; and (3) appellate counsel deprived him of effective assistance by omitting significant and obvious issues in the appeal of right. *Id.*

On March 3, 2016, the trial court denied Petitioner's motion for relief from judgment. *See People v. Beaver*, No. 11-93202-FH (Crawford Cty. Cir. Ct. Mar. 3, 2016) (ECF No. 13-15). The Michigan Court of Appeals denied his application for leave to appeal because he "failed to establish that the trial court erred in denying his motion for relief from judgment." *See People v. Beaver*, No. 334660 (Mich. Ct. App. Dec. 21, 2016) (ECF No. 13-18, PageID.2097). On November 29, 2017, the

6

Michigan Supreme Court again denied leave to appeal. *See People v. Beaver*, 903 N.W.2d 566 (Mich. 2017).

On December 19, 2017, Petitioner returned to federal court with a motion to lift the stay and amend his previous petition. (ECF No. 7). On April 10, 2018, the Court granted Petitioner's motion and ordered him to file an amended petition. (ECF No. 8).

Petitioner subsequently filed an amended petition, which lists the four claims that he presented to the state courts on direct review (I through IV) and the three claims that he presented to the state courts on post-conviction review (I through III). (ECF No. 9, PageID.147-49).[1] The State subsequently filed the state-court record and an answer in opposition to the habeas petitions, *see* ECF Nos. 12 and 13, and on January 3, 2019, Petitioner filed a reply, *see* ECF No. 14.

## II. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") limits the authority of a federal district court to grant habeas relief on a

---

[1] The Court is treating Petitioner's claims as consecutive claims and will refer to them as claims one through seven.

claim that was adjudicated on the merits by the state courts. *See* 28 U.S.C. § 2254(d). A § 2254 petition may only be granted if the state-court adjudication was "contrary to" or resulted in an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2).

A state-court decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). A state-court decision is an "unreasonable application of clearly established" law "where 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case.'" *Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018) (alterations in original) (quoting *Williams*, 529 U.S. at 413), *cert. denied*, 140 S. Ct. 56 (2019). An "unreasonable

application" is more than incorrect; it must be "objectively unreasonable." *Id*. at 767–68 (citing *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

## III. Discussion

### A. Denial of the Motion for New Trial

Petitioner first claims that the trial court abused its discretion when it denied his motion for a new trial based on newly discovered evidence. (ECF No. 5, PageID.46-51). Petitioner initially presented his claim as one of state law, but later recharacterized it as a federal due process claim in his reply brief. (ECF No. 14, PageID.2170-80.)

Federal habeas relief may not be granted on the basis of a violation of state law. *E.g. Winters v. Balcarel*, No. 2:18-cv-12668, 2021 WL 915615 at *12 (E.D. Mich., March 10, 2021) (citing *Pudelski v. Wilson*, 576 F.3d 595, 611 (2009)). Thus, the Court may only review the denial of a motion for a new trial for constitutional error. *Pudelski*, 576 F.3d at 611 (2009). To show that the denial of his motion for a new trial violated due process, Petitioner would need to establish that the state court's denial was "'so egregious' that it violated his right to a fundamentally fair trial." *Pudelski*, 576 F.3d at 611; (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009), and *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004));

*see also Guidry v. Sheets*, 452 F. App'x 610, 613 (6th Cir. 2011). Because Petitioner cannot establish this, he is not entitled to habeas relief on this claim.

Petitioner argues that he was entitled to a new trial because newly discovered evidence showed the testimony of two key trial witnesses— Plaga and Deardorff—to have been false. The newly discovered evidence consisted of the affidavits of Ronald Ray and William Robinson, and of Ray's testimony at the evidentiary hearing in state court.  As explained by the state court,

> [i]n the affidavits, the two inmates averred that Plaga had implicated himself and Deardorff in a home invasion, during which Plaga pushed Deardorff through a window so she could open the front door. At an evidentiary hearing, Ray testified that he overheard Plaga telling other inmates about breaking into numerous houses and that Plaga had helped his girlfriend through a window. According to Ray, Plaga mentioned taking safes, guns, computers, and a television. On cross-examination, Ray admitted that he did not know whether Plaga was referring to the home invasion at issue here.

*Beaver*, 2013 WL 6689101, at *1.

Both affiants also stated that they met Petitioner on or about February 19, 2012, and that Petitioner told them that he was

incarcerated because Plaga wrongfully testified that Petitioner had participated in a home invasion. Petitioner also allegedly told Ray and Robinson that Plaga's girlfriend had testified that she did not participate in the home invasion. (ECF No. 13-16, PageID.1914-15, 1917-18).

Robinson failed to appear at the evidentiary hearing on Petitioner's motion for new trial, despite being subpoenaed. Ray testified consistent with his affidavit, although he could not remember some details, and he admitted that he did not know for sure which home, or even which area, Plaga had described to the jail inmates.

After considering this evidence, the trial court denied Petitioner's motion for a new trial. In reaching this conclusion, the trial court pointed out that the new evidence was vague, did not have a strong exculpatory connection to the offense, and did not totally undermine Plaga's inculpatory testimony. The court concluded that it was far from probable that a different outcome would result if the new evidence were presented at a new trial. (ECF No. 13-16, PageID.1927-1936.)

On direct appeal, the Michigan Court of Appeals affirmed, finding that "the information referenced in the affidavits of Robinson and Ray and Ray's testimony at the evidentiary hearing lacked the necessary

exculpatory connection." *Beaver*, 2013 WL 6689101, at *2. In reaching

this conclusion, the Court of Appeals noted that "[n]either affidavit

indicated that Plaga was referring to the instant home invasion in any of

the alleged comments he made. And at the evidentiary hearing, Ray

testified that he could not say whether Plaga was referring to the instant

home invasion." *Id*. The Court of Appeals also noted:

> that Plaga had testified about Plaga himself entering through a
> window and letting defendant inside, while Robinson and Ray had
> overheard Plaga state that Deardorff entered through a window
> and let Plaga inside, reasonably suggesting the possibility that
> Plaga was indeed speaking of a different home invasion when he
> was in jail. Further, neither affiant averred that Plaga stated that
> defendant was not involved in the instant home invasion, and Ray
> never testified that Plaga had denied defendant's involvement. And
> neither affiant averred that Plaga disclosed a plan to lie at
> defendant's trial regarding defendant's involvement in the crime.
> The newly discovered evidence does indicate that Plaga may have
> lied about Deardorff's level of involvement in some home invasions
> (which may or may not have included the instant one), but the jury
> was made aware of this at trial through Plaga's own admissions
> that he had misrepresented her involvement. In short, the newly
> discovered evidence in no way undermined the inculpatory nature
> of Plaga's testimony.

*Id*.

As the Michigan Court of Appeals correctly held, the trial court's

decision not to credit Ray and Robinson's affidavits and Ray's testimony

was reasonable. On federal habeas review, such factual findings may be reversed only on the basis of "clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Guidry*, 452 F. App'x at 613. Given the ambiguity of the affidavits at issue, Petitioner cannot make that showing. Hence, the Court must honor the state-court's decision not to credit the affidavits. *Id.*

Accordingly, Petitioner did not establish that the trial court's denial of his motion for a new trial was so egregious as to implicate his due process rights, and the Court must decline to grant relief on his first claim.

### B. Ineffective Assistance of Trial Counsel

Petitioner next argues that his trial attorney was ineffective for opening the door to otherwise inadmissible and prejudicial evidence that Petitioner previously was convicted of a similar charge. (ECF No. 5, PageID.52-56). The Michigan Court of Appeals explained the background for this claim as follows:

> Defendant conceded that he had previously been convicted of a drug felony, which served as the predicate felony for the felon-in-possession charge, and which also formed the basis for defendant's claim that upon seeing firearms in Plaga's garage before the crime occurred, he left the house because, as a convicted felon, he could

13

not legally be around those weapons. On direct examination by defense counsel, defendant responded, "No," when asked whether he had any other convictions. Defendant then attempted to clarify that he had a misdemeanor drug conviction, and defense counsel stated that he was not interested in misdemeanors. The prosecutor immediately jumped in claiming that the door was now open on all of defendant's prior convictions. Defendant had prior misdemeanor convictions for receiving and concealing stolen property and entering without permission, and the parties do not dispute that these convictions were not otherwise admissible under MRE 609 (impeachment by prior conviction). Defense counsel then had defendant acknowledge "other convictions," aside from the felony drug conviction. On cross-examination, the prosecutor elicited testimony concerning the specific misdemeanor convictions for receiving and concealing stolen property and entering without permission.

*Beaver*, 2013 WL 6689101, at *3.

The Court of Appeals concluded from the record that defense counsel apparently intended to elicit testimony about Petitioner's other *felony* convictions and that he simply misspoke when he asked about any other convictions. *Id*. The Court of Appeals also determined that Petitioner had not established a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at *4.

Petitioner's ineffectiveness claim is governed by the two-prong *Strickland* standard. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). To establish that counsel's assistance was so defective as to require reversal

14

of a conviction, a defendant must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *E.g. Burgess v. Booker*, 526 F.App'x 416, 428 (6th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show that counsel's performance was constitutionally deficient, Petitioner must show that his performance "fell below an objective standard of reasonableness under prevailing professional norms." *Magana v. Hofbauer*, 263 F.3d 542, 546 (6th Cir. 2001) (citing *Strickland*, 466 U.S. at 687). To show prejudice, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A habeas petitioner must additionally show that the state court's application of these standards was unreasonable under §2254(d). *Burgess*, 526 F.App'x at 428 (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

"Opening the door to damaging testimony can constitute deficient performance." *Jones v. Harry*, 405 F. App'x 23, 27 (6th Cir. 2010) (citing *White v. Thaler,* 610 F.3d 890, 900 (5th Cir. 2010)). Here, however, it appears that defense counsel was trying to establish that Petitioner's only prior felony conviction was a drug conviction. (ECF No. 13-8,

15

PageID.1383-85.) Petitioner mentioned the misdemeanor convictions without being prompted to do so, and only after first having responded that he had no other felony convictions. The state-court's finding that counsel's error did not constitute ineffective assistance is therefore not so unreasonable as to satisfy the demanding standard of §2254(d).

Nor could Petitioner establish prejudice even if the error did render counsel's representation constitutionally deficient. When determining whether the result of a proceeding would have been different without counsel's unprofessional error, "the court reconsiders how the balance of evidence would have stood, but for counsel's errors." *Bridges v. Cason*, 198 F. App'x 491, 495 (6th Cir. 2006) (citing *Wiggins v. Smith*, 439 U.S. 510, 534 (2003)).  As pointed out by the Michigan Court of Appeals on direct review, Petitioner's

> credibility and version of events was impeached by the testimony of several witnesses, including Plaga and Deardorff. Moreover, Bingley testified that defendant was present at Plaga's home in February when he, Bingley, purchased guns from Plaga. Further, an officer who questioned defendant after his arrest testified that despite the fact that defendant told him that he did not go up north until March 17, 2010, after the commission of the crime, the officer's investigation revealed that defendant had filled a prescription up north in late November 2009.

16

*Beaver*, 2013 WL 6689101, at *4. Prosecution witness Richard Poet also testified that Petitioner was in northern Michigan before March 17, 2010. (ECF No. 13-7, PageID.925).

The evidence against Petitioner was substantial, and he has failed to establish a substantial probability that the result of the trial would have been different but for counsel's error. Given the highly deferential treatment due under *Strickland* and § 2254(d), the Court concludes that the state appellate court's rejection of Petitioner's claim was not unreasonable. Accordingly, habeas relief is denied on this claim.

## C. Prosecutorial Misconduct

The third habeas claim alleges that the prosecutor committed misconduct by threatening to arrest defense witness Mary Vann to prevent her from testifying and then arresting her in the lobby outside the courtroom after she testified. (ECF No. 5, PageID.57-62). Although Vann was Pamame's witness and the prosecutor later dismissed the charges against Vann, there was a loud commotion during her arrest. (ECF No. 13-8, PageID.1461, 1488-1490).

Petitioner contends that Vann's screams outside the courtroom undermined her credibility and denied him due process and a fair trial.

17

(ECF No. 5, PageID.57.) The Michigan Court of Appeals adjudicated this claim on the merits on direct appeal and concluded that the record did not support Petitioner's position that the prosecutor used an improper method calculated to produce a wrongful conviction. *See Beaver*, 2013 WL 6689101, at \*4.

Prosecutors have a "duty to refrain from improper methods calculated to produce a wrongful conviction." *Puertas v. Overton*, 2006 U.S.App. Lexis 8219 at\*25 (6th Cir. 2006) (citing *Viereck v. United States*, 318 U.S. 236, 248 (1943)), but the decision whether to prosecute someone and what charge to file generally rests in his or her discretion. *Rodriguez-Penton v. United States*, 905 F.3d 481, 494 (6th Cir. 2018) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Here, the prosecutor who tried Petitioner's case stated in the jury's absence that the warrant for Vann was not based on Vann's testimony, and Petitioner's attorney conceded that witnesses may be arrested after they testify. (ECF No. 13-8, PageID.1488-1490). More importantly, Petitioner has not shown that the prosecutor asked law enforcement officers to arrest Vann in the lobby outside the courtroom. Indeed, there

is no evidence that the prosecutor knew the officers would arrest Vann immediately after she exited the courtroom.

Because there is no evidence that the prosecutor was involved in this incident at all, the state-court's conclusion that there was no evidence of prosecutorial misconduct was not unreasonable, and Petitioner has no right to relief on this claim.

### D. Other Prosecutorial Conduct

Petitioner's fourth habeas claim alleges additional instances of prosecutorial misconduct. Specifically, Petitioner contends that the prosecutor failed to correct perjured testimony, vouched for the prosecutor's witness, misstated evidence during his closing argument, and elicited improper, irrelevant testimony about Petitioner's gang membership. Petitioner argues in the alternative that his trial attorney was ineffective for failing to object to the prosecutor's conduct. (ECF No. 5, PageID.63-66, and ECF No. 5-1, PageID.67-72).

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting substantial rights" because Petitioner did not raise specific objections to the prosecutor's conduct and contemporaneously request curative instructions. *See Beaver*, 2013 WL 6689101, at *4. The

State, however, has not argued that Petitioner's claim is procedurally defaulted, and the Court is not required to raise a procedural-default defense on its own motion. "[I]n the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Gumm v. Mitchell*, 775 F.3d 345, 374 (6th Cir. 2014) (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997)). The Court will therefore address the merits of Petitioner's claims.

"On habeas review, 'the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (quoting *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)). Consequently, although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck*, 318 U.S. at 248, prosecutorial-misconduct claims are reviewed deferentially in a habeas case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

## 1. Failure to Correct Perjury

Petitioner alleges that the prosecutor failed to correct Plaga's perjured testimony. (ECF No. 5, PageID.63-66). The Michigan Court of Appeals rejected this claim because Petitioner failed to establish any false testimony or that the prosecutor knowingly failed to correct perjured testimony. *See Beaver*, 2013 WL 6689101, at *5.

To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner "must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009); *see also Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012). "[O]rdinarily, claims of perjury must also overcome a harmless-error analysis." *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019).

Petitioner alleges that the prosecutor's dismissal of charges against Mary Vann is evidence of Plaga's perjury because the charges against Vann required Plaga's testimony. (ECF No. 5, PageID.65). But even if the prosecutor needed Plaga's testimony to prosecute Vann, Petitioner merely speculates that the prosecutor dismissed the charges against Vann because Plaga perjured himself at Petitioner's trial.

21

Petitioner's additional allegations of perjury are based primarily on differences between Plaga's testimony at Petitioner's preliminary examination and at trial. The alleged discrepancies, however, concern minor details, such as whether Plaga was alone or with Deardorff when he first scoped out the address, who drove to the house before the break-in, the number of times that Petitioner went inside the house, and how well Plaga knew William Earl Bingley. (*See id*. at PageID.64-65.)

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Here, Petitioner has failed to show that Plaga lied about the material facts, namely, whether Petitioner was involved in the break-in and the theft of property from the victims' home. Nor has Petitioner shown that the prosecutor knew Plaga was lying about Petitioner's participation in the crimes. Therefore, the state court's rejection of Petitioner's claim was not unreasonable, and the contention that the prosecutor failed to correct perjured testimony fails.

## 2. Vouching

Petitioner asserts that the prosecutor improperly vouched for Detective McDonald when he said, "I happen to have a lot of respect for

22

the man." (*See id*. at 1244, PageID.1614.) The Michigan Court of Appeals rejected Petitioner's claim in part because the prosecutor's remark was a response to defense counsel's closing argument. The Court of Appeals also held that even if the prosecutor's remark were improper, Petitioner failed to establish that the remark was prejudicial, that he was actually innocent, or that the alleged error affected the fairness of the proceedings. Finally, it emphasized that there was no prejudice because the trial court instructed the jurors that credibility determinations were for them to make. *See Beaver*, 2013 WL 6689101, at *6.

"'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility[.]'" *United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)). This does not mean "that every favorable comment on a government witness constitutes prosecutorial misconduct[.]" *Id*. at 300. "[I]n each case, the effect of such comments must be considered in the context of the prosecutor's other statements, the defense arguments, and the evidence presented at trial." *Id*. (citing *United States v. Young*, 470 U.S. 1, 16 (1985)).

23

The prosecutor at Petitioner's trial did not say he believed McDonald or that McDonald's testimony was credible. Although his comment that he respected McDonald implied that he found McDonald to be credible, he pointed out that McDonald had a minor role in the case before another deputy sheriff assumed responsibility for the case.

What is more, the prosecutor's remark about McDonald was a response to defense counsel's closing argument that Detective McDonald was "very unprofessional." (ECF No. 13-9, PageID.1584). Prosecutors ordinarily are entitled to "wide latitude during closing argument to respond to" arguments made by defense counsel. *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)).

Finally, the trial court instructed the jurors that it was their job to decide which witnesses to believe and how important they thought their testimony was. The court explained that the jurors were free to believe all, none, or part of any person's testimony and that the jurors should rely on their own common sense and everyday experiences when deciding whether to believe a witness's testimony. (ECF No. 13-9, PageID.1643-45.)

24

Accordingly, the state court's rejection of Petitioner's claim was not unreasonable, and Petitioner has no right to relief on his claim that the prosecutor vouched for Detective McDonald.

### 3. Misstating the Evidence

Next, Petitioner alleges that the prosecutor misstated the evidence and misled the jury into believing that he was a bad person when the prosecutor stated during closing arguments that Petitioner had prior convictions for breaking and entering and drug crimes. (*See id*. at 1238, PageID.1608.) Petitioner asserts that he had no prior convictions for breaking and entering and drug crimes. Instead, his criminal history included one misdemeanor conviction for entry without permission, one misdemeanor conviction for receiving and concealing property worth less than $100, and one felony conviction, which the jury was aware of, for delivery or manufacture of a controlled substance less than 50 grams. (ECF No. 5-1, PageID.67-68). The Michigan Court of Appeals stated on review of this claim that, even though nothing in the record supported the prosecutor's statement that Petitioner had past breaking-and-entering convictions, the error was not outcome-determinative. *See Beaver,* 2013 WL 6689101, at *6.

25

Prosecutors may not misrepresent facts in evidence or assert facts that were never admitted in evidence because doing so may have a significant impact on the jury's deliberations or mislead the jury. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). But Petitioner admitted during cross-examination by the prosecutor that his criminal history included other convictions besides the felony drug conviction that was the basis for the felon-in-possession charge. He also acknowledged that his prior convictions involved receiving and concealing stolen property, breaking and entering or entering without owner's permission, and other misdemeanors. He explained that he had not mentioned those convictions earlier because he had been told that if he successfully completed probation, those convictions would not appear on his record. (ECF No. 13-8, PageID.1404-07.)

Furthermore, "breaking and entering without permission is a necessarily included lesser offense of breaking and entering with the intent to commit a felony," *People v. Cornell*, 466 Mich. 335, 360 (2002), and the trial court cautioned the jurors that the lawyers' statements and arguments were not evidence. (ECF No. 13-9, PageID.1642). Juries are presumed to follow a court's instructions to them. *See, e.g., Stanford v.*

*Parker*, 266 F.3d 442, 459 (6th Cir. 2001). The state courts were therefore not unreasonable in finding that the prosecutor's error was harmless.

Finally, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Thus, Petitioner has no right to relief on his claim that the prosecutor portrayed him as a bad person.

### 4. References to Gang Membership

Petitioner's final claim about the prosecutor is that he elicited improper and irrelevant testimony about membership in gangs. Petitioner contends that evidence of gang affiliation is inherently prejudicial and that the prosecutor introduced the evidence solely to portray him as a violent person. (ECF No. 5-1, PageID.68-71).

The Michigan Court of Appeals held on direct review of Petitioner's claim that "the prosecutor offered the evidence of [Petitioner's] gang membership to demonstrate how the involved individuals knew each other and to bolster Plaga's credibility." *Beaver*, 2013 WL 6689101, at *7.

Petitioner has not pointed to any Supreme Court decision that evidence of membership in gangs is inherently prejudicial. He cites *Fahy*

27

*v. Connecticut*, 375 U.S. 85 (1963), for the principle that a defendant's right to a fair trial is violated when there is a reasonable possibility that inadmissible evidence might have contributed to the conviction. But the relevant question on review of a prosecutor's conduct is whether the conduct rendered the habeas petitioner's trial "so fundamentally unfair as to deny him due process." *DeChristoforo*, 416 U.S. at 645.

The prosecutor at Petitioner's trial asked several witnesses about membership in gangs. (ECF No. 13-7, PageID.960-62) (direct examination of Deardorff regarding Plaga's and the defendants' membership in gangs); (ECF No. 13-8, PageID.1187-1189) (redirect examination of Plaga regarding Plaga's and Petitioner's gang affiliations); (*id*. at 886-87, PageID.1256-57) (cross-examination of William Estepp as to whether Petitioner was a member of a gang); (*id.* at 932-33, PageID.1302-03) (cross-examination of defense witness Mary Framak as to whether Petitioner had been involved in gang activity); (*id*. at 980-81, PageID.1350-51) (cross-examination of defense witness Heather Framak as to whether Petitioner was involved in a gang).[2]

---

[2] Defense counsel also raised the issue, but he may have done so in response to the prosecutor's comments. *See* 2/15/12 Trial Tr. at 781-83

In any event, both Plaga and Petitioner testified that they were in gangs when they were kids or teenagers. Petitioner testified that he had not been involved in a gang since he was a juvenile. (ECF No. 13-8, PageID.1382-83). Plaga testified that even though he and Petitioner had been in rival gangs, they grew out of that as they got older and that a lot of gang members currently were friends with each other.  *See id*. at 817-21, PageID.1187-91.

Additionally, as the Michigan Court of Appeals pointed out on review of Petitioner's claim, the prosecutor may have offered evidence of gang membership to bolster Plaga's credibility. Plaga testified that gangs lived by a code that prohibit "snitching" and that he was putting himself in danger by testifying because life is difficult for prisoners who have snitched on someone. He thought that the defendants' gangs and his own gang would be after him once he was in prison. *See id*. at 822-24, PageID.1192-94.

---

(ECF No.13-8, PageID.1151-53 (cross examination of Plaga regarding Plaga's prior membership in a gang); (*id*. at 961, PageID.1331) (direct examination of Heather Framak as to whether Petitioner ever said anything about his gang affiliation); (*id*. at 1011-13, PageID.1381-1383) (direct examination of Petitioner regarding his former gang membership).

Given Plaga's and Petitioner's testimony that their gang membership was a thing of the past, and the likelihood that the prosecutor was trying to bolster Plaga's credibility by offering testimony about gang membership, Petitioner was not deprived of his right to a fair trial. Therefore, the prosecutor's elicitation of testimony about gangs was not improper, and the state appellate court's rejection of Petitioner's claim was not unreasonable. Petitioner has no right to habeas relief on his claim.

### 5. Trial Counsel's Failure to Object

Petitioner argues in the alternative that his trial attorney was ineffective for failing to object to the prosecutor's conduct. (ECF No. 5-1, PageID.63, 71). The Michigan Court of Appeals rejected this claim on direct appeal, finding that Petitioner was not prejudiced by his attorney's failure to object to the prosecutor's alleged vouching. *Beaver*, 2013 WL 6689101, at *6. As for the prosecutor's comments about Petitioner's prior convictions and the prosecutor's elicitation of testimony about past gang affiliation, the Court of Appeals found that Petitioner had not overcome the presumption that counsel's failure to object was trial strategy. *Id.* at *7.

Defense counsel was not ineffective for failing to object to the prosecutor's conduct. As explained above, the disputed conduct was either proper or the claimed errors were harmless. Accordingly, Petitioner has no right to relief on his related claim about trial counsel's failure to object to the prosecutor's conduct.

### E. Trial Counsel's Illness and a Detective's Destruction of Notes

Petitioner's fifth claim alleges that he was denied his Sixth Amendment right to effective assistance of trial counsel because counsel suffered from an illness that affected his ability to represent Petitioner. (ECF No. 9, PageID.170-73). Petitioner's sixth claim alleges that the police deprived him of his constitutional rights by destroying notes that were used to generate a police report. *See id*. at PageID.174-88.

Petitioner raised these claims for the first time in his motion for relief from judgment. The state trial court rejected the claims because Petitioner could have raised the claims on appeal and he failed to show a significant possibility that he was innocent or that he suffered actual prejudice. (ECF No. 13-15, PageID.1870-71). Accordingly, the State

31

argues that claims five and six are procedurally defaulted. (ECF No. 12, PageID.208-09, 213, 237-42, 254-55).

## 1. Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest*, 522 U.S. at 89. When a claim is procedurally defaulted, a federal court must decline to hear it. *See, e.g.*, *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

For the Court to find that Petitioner procedurally defaulted his fifth and sixth claims, the Court "must conclude that: (1) [Petitioner] failed to comply with a state procedural rule; (2) the Michigan state courts enforced the rule; (3) the Michigan procedural rule is an adequate and independent state ground for denying review of [Petitioner's] federal constitutional claim[s]; and (4) [Petitioner] cannot show cause and prejudice excusing the default." *Williams v. Burt*, 949 F.3d 966, 972–73 (6th Cir. 2020) (citing *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*)), *cert. denied*, 141 S. Ct. 276 (2020). "To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look 'to the last reasoned state court decision disposing of the

claim.'" *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (quoting

*Guilmette*, 624 F.3d at 291) (alteration added).

The state procedural rule at issue here is Michigan Court

6.508(D)(3), which reads in relevant part as follows:

> **(D) Entitlement to Relief.** The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> > . . . .
> >
> > (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
> >
> > > (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> > >
> > > (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

Petitioner violated this rule by raising his fifth and sixth claims for

the first time in his motion for relief from judgment even though he could

33

have raised the claims in his appeal of right. The state trial court was the last state court to issue a reasoned decision on Petitioner's fifth and sixth claims, and it rejected the claims because Petitioner did not raise the claims on direct appeal and because he did not show "good cause" and "actual prejudice" under Michigan Court Rule 6.508(D)(3)(a) and (b). This ruling constituted enforcement of Rule 6.508(D). Accordingly, the first and second procedural-default factors are satisfied.

The third factor also is satisfied, because Rule 6.508(D) is an adequate and independent ground on which state courts may rely to foreclose review of federal constitutional claims. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Therefore, to prevail on his procedurally defaulted claims, Petitioner must show "cause" for his state procedural error and resulting prejudice.

## 2. "Cause" for the Procedural Default

Petitioner alleges in his seventh claim that his appellate attorney was ineffective for failing to raise his fifth and sixth claims on appeal. He also maintains that his appellate counsel's ineffectiveness satisfies the "cause and prejudice" test and allows the Court to reach the merits of his

34

defaulted claims. (ECF No. 9, PageID.178-82; ECF No. 14, PageID.2178-79).

Constitutionally ineffective assistance of counsel is a "well-recognized basis for showing cause and prejudice" for a procedural default. *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (noting that constitutionally ineffective assistance of appellate counsel "is a well-recognized basis for showing cause and prejudice".); *See also Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Nevertheless, "[a]n argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). "The latter must meet the higher AEDPA standard of review, while the former need not." *Id*. at 237.  The Court, therefore, reviews *de novo* the question of whether ineffective assistance of appellate counsel excuses Petitioner's procedural default.

When assessing whether counsel's actions prejudiced the petitioner, the Court considers the strength of the claims that appellate counsel failed to raise. *Carter v. Parris*, 910 F.3d 835, 841 (6th Cir. 2018) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). "If there is no

35

'reasonable probability that inclusion of the issue would have changed the result of the appeal,' then habeas relief will not be granted." *Id.* (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)).

### a. Trial Counsel's Illness

The substance of Petitioner's fifth claim is that trial counsel suffered from an illness which affected counsel's ability to represent him. According to Petitioner, his lawyer informed him during trial that he was not feeling well and that he could not concentrate. Petitioner further alleges that, although trial counsel suggested to him that he obtain substitute counsel, his lawyer refused to refund his retainer fee, and he died shortly after Petitioner's trial. Petitioner concludes that counsel's illness and refusal to refund his money hindered his right to present a defense and amounted to ineffective assistance under *Strickland*. (ECF No. 9, PageID.170-173).

There is support in the record for Petitioner's allegation that his trial attorney was ill. At the evidentiary hearing on Petitioner's motion for new trial, the attorney stated that he could not go forward with the case after that day because he had suffered some very serious illnesses and was released from the hospital a week earlier. (ECF No. 13-13,

PageID.1775.) The record also indicates that the attorney misspoke at times during trial when he mentioned witnesses by name. He apologized for his mistakes during his closing argument and explained that it was not uncommon to misstate names when working under pressure. (ECF No. ECF No. 13-9, PageID.1569).

Despite the occasional misstatements at trial, defense counsel appears to have ably defended Petitioner. At the beginning of the trial, defense counsel actively participated in jury selection, and he asked the court to caution witnesses not to mention other crimes for which the defendants were not on trial. During the prosecutor's presentation of his case, defense counsel skillfully cross-examined prosecution witnesses and re-cross examined most of them. At the close of the prosecution's case, defense counsel made an opening statement in which he explained that defense witnesses would establish that Petitioner was not living with Plaga and Deardorff in northern Michigan when the crime occurred. He also suggested that the jurors would have a serious doubt about the credibility of prosecution witnesses.  Defense counsel then presented five defense witnesses, including Petitioner. The trial court described the case

as "a classic jury question . . . with conflicting facts." *See id*. at 1165, PageID.1535.

Throughout the trial, defense counsel made timely and appropriate objections. He also made a motion for a directed verdict of acquittal, and he participated in discussions about the jury instructions and verdict form. In his closing argument, defense counsel stressed the presumption of innocence and the prosecutor's burden of proof. He argued that Plaga was a thief, liar, and professional criminal and that neither Plaga, nor Deardorff, was credible.

It is difficult to establish ineffective assistance where, as here, an attorney's "overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111. Counsel's errors were not so serious that he was not functioning as the "counsel" guaranteed Petitioner under the Sixth Amendment.  Therefore, appellate counsel was not ineffective for failing to raise Petitioner's fifth claim on direct appeal. It follows that appellate counsel was not "cause" for Petitioner's procedural default.

Accordingly, Petitioner's fifth claim is procedurally defaulted.

### b. The Officer's Destroyed Notes

Petitioner's sixth claim alleges that the police deprived him of his right of cross-examination, his right to present a defense, and his right to a fair trial by destroying notes that were used to generate a police report. (ECF No. 9, PageID.174-77). This claim arose during defense counsel's cross-examination of Detective McDonald regarding McDonald's interview with Petitioner in May of 2011. When defense counsel asked McDonald whether he had written down verbatim what he had discussed with Petitioner, McDonald answered that he took a few notes, but he did not keep his notes. (ECF No. 13-7, PageID.742).

Petitioner contends that, under state law, if a police officer's report is admitted in evidence, the notes used to prepare the report must accompany the report. Petitioner further contends that because McDonald destroyed the notes he made during his interview with Petitioner, he was unable to cross-examine McDonald about the comments Petitioner allegedly made during the interview. Petitioner informed McDonald that he was not in northern Michigan before March 17, 2018, that he was not a burglar, and that "this shit ain't gonna stick." *See id.* at PageID.727, 744, 749.

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *United States v. Mejia-Ruiz*, 433 F.App'x 455, 458 (6th Cir. 2011). This includes the right to effectively cross-examine each witness. *Id.*  In addition, the Due Process Clause of the Fourteenth Amendment "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Porter v. Eppinger*, 2021 WL 3828113 at *14 (6th Cir. 2021) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The failure to preserve potentially useful evidence constitutes a due process violation only when the government acted in bad faith. *E.g. United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).[3]

Detective McDonald indicated at trial that he incorporated the information from his notes into his report of the interview with Petitioner. (ECF No. 13-7, PageID.742). Defense counsel had access to the report at trial, *see id.* at PageID.742-43, and he was able to cross-examine McDonald about his interview with Petitioner and his report,

---

[3] A separate standard applies where the allegedly destroyed evidence was material and exculpatory, but Petitioner does not (and could not) allege that this is the case here.

which included Petitioner's comments to McDonald. *See id.* at PageID.744-752. The report was comparable to McDonald's notes, and there is no evidence that McDonald acted in bad faith when he destroyed his notes regarding the interview with Petitioner. Defense counsel, moreover, took advantage of McDonald's failure to keep his notes and his failure to get a written statement from Petitioner to attack McDonald's professionalism. (ECF No. 13-9, PageID.1595).

Petitioner was not deprived of his right of cross-examination or his rights to a fair trial by Detective McDonald's destruction of the notes that he made during his interview with Petitioner. Consequently, appellate counsel was not ineffective for failing to raise Petitioner's sixth claim on direct appeal, and Petitioner has not shown "cause" for his procedural default.

Accordingly, Petitioner's sixth claim is also procedurally defaulted.

### 3. Prejudice and Miscarriage of Justice

The Court need not determine whether the alleged constitutional errors prejudiced Petitioner, because he has failed to show "cause" for his failure to comply with state law. *Simpson v. Jones*, 238 F.3d 399, 409 (6th

41

Cir. 2000); *Smith v. Murray*, 477 U.S. 527, 533 (1986). In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496). A claim of actual innocence "requires presentation of new, reliable evidence that was not available at trial." *In re Troxell*, U.S. App. LEXIS 27596 at *1 (6th Cir. 2021) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Petitioner has presented the Court with Ray and Robinson's affidavits, and the record before the Court includes the transcript of Ray's testimony during the state evidentiary hearing. However, as pointed out in the discussion on Petitioner's first claim, the two affidavits and Ray's testimony at the evidentiary hearing do not rule out the possibility that Petitioner participated in the home invasion and theft of items from the victims' home. Thus, the affidavits and testimony are not reliable evidence of actual innocence, and a miscarriage of justice will not result

from the Court's failure to address the substantive merits of Petitioner's fifth and sixth claims. Accordingly, Petitioner is not entitled to habeas relief on the basis of these claims.

## F. Appellate Counsel

Petitioner's seventh claim asserts that his appellate counsel was constitutionally ineffective for failing to raise the arguments involved in the fifth and sixth habeas claims on direct appeal. (ECF No. 9, PageID.178-182).[4] As has already been explained above, appellate counsel was not wrong to fail to raise these arguments because they did not have merit. Accordingly, the trial court's rejection of Petitioner's

---

[4] Like Petitioner's fifth and sixth claims, Petitioner raised his seventh claim for the first time in his motion for relief from judgment. The claim is not procedurally defaulted, however, because an attorney cannot be expected to accuse himself or herself of ineffective assistance. *United States v. Rezin*, 322 F.3d 443, 445 (7th Cir. 2003). Thus, state collateral review was the first opportunity that Petitioner had to raise his claim about his appellate attorney. *See Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004). Or, as another court put it, "[t]he procedural-default rule stated by Rule 6.508(D)(3) applies only to claims that could have been brought on direct appeal, and thus - by necessity - it does not apply to claims of ineffective assistance of *appellate* counsel." *Guilmette*, 624 F.3d at 291 (emphasis in original).

claim about appellate counsel was objectively reasonable and Petitioner has no right to relief on this claim.

## IV. Conclusion and Order

For the reasons set forth above, the Court must deny the initial and amended petitions for a writ of habeas corpus.

Federal Rule of Appellate Procedure 22(b)(1) provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11(a) of the Rules Governing Section 2254 Cases requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

To obtain a certificate of appealability, a prisoner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes the required showing if he demonstrates that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

44

Petitioner has failed to make a substantial showing of the denial of a federal constitutional right, and reasonable jurists would not find this Court's assessment of Petitioner's claims debatable or wrong. Nor would reasonable jurists conclude that the issues deserve encouragement to proceed further. Consequently, Petitioner is not entitled to a certificate of appealability. *Millender v. Adams*, 187 F. Supp.2d 852, 880 (E.D. Mich. 2002). He may apply to the Court of Appeals for a certificate of appealability.

The Court further concludes that an appeal from this decision could not be taken in good faith. Therefore, Petitioner may not proceed *in forma pauperis* on appeal. 28 U.S.C. § 1915(a)(3). He may apply to the Court of Appeals for permission to proceed *in forma pauperis* on appeal.

IT IS SO ORDERED.

Dated: September 29, 2021             s/Judith E. Levy
      Ann Arbor, Michigan        JUDITH E. LEVY
                                    United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2021.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
